# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY JOHN QUELET,** | : | **Civil Action No. 1:12-CV-1914** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **VERNON PRESTON, M.D.,** | : | |
| **LISA SMITH, STEPHEN** | : | |
| **PFISTERER, DEBORAH** | : | |
| **DeANGELO, BRENDAN BUCKLEY** | : | |
| **HILLSIDE PAIN MANAGEMENT,** | : | |
| **PC, HANOVER FAMILY PRACTICE** | : | |
| **ASSOCIATES, and HANOVER** | : | |
| **REHABILITATION CENTER,** | : | |
| **d/b/a YORK STREET REHAB, a/k/a** | : | |
| **HANOVER HOSPITAL** | : | |

## MEMORANDUM

Presently before the court in the above-captioned matter are the motions to dismiss of defendants Deborah DeAngelo and Hillside Pain Management, PC (Doc. 56), Hanover Rehabilitation Center (Doc. 45), Stephen Phisterer (Doc. 64), Lisa Smith, Vernon Preston, and Hanover Family Practice Associates (Doc. 67), and Brendan Buckley (Doc. 75), and the motions to strike of Deborah DeAngelo and Hillside Pain Management (Doc. 62), and Hanover Rehabilitation Center (Doc. 59). For the reasons to be discussed, the court will grant the motions to dismiss in part and deny them in part, and deny the motions to strike.

# I.    Factual and Procedural Background

The instant motions to dismiss come before the court pursuant to Federal Rule of Civil Procedure 12(b)(6).  Accordingly, the court will "accept all well-pleaded facts in the complaint as true and view them in the light most favorable" to the plaintiff.  <u>Carino v. Stefan</u>, 376 F.3d 156, 159 (3d Cir. 2004).

Jeffrey J. Quelet is a resident of Maryland.  Defendant Lisa Smith is a licensed nurse practitioner, formerly employed by defendant Hanover Family Practice Associates ("Hanover Family Practice").  Defendant Vernon H. Preston, M.D., is a licensed physician was also formerly employed by Hanover Family Practice.  Defendant Stephen Pfisterer, MPT, is a physical therapist employed by Hanover Family Practice.  Defendant Brendan K. Buckley, D.C., is a licensed chiropractor doing business as Buckley Chiropractic Center, P.C. ("Buckley Chiropractic").  Defendant Debra DeAngelo, D.O., is a licensed physician employed by Hillside.  Hanover Family Practice, Buckley Chiropractic, Hillside Pain Management, PC ("Hillside"), and Hanover Rehabilitation Center ("Hanover Rehabilitation") are Pennsylvania corporations doing business in Hanover, Pennsylvania.

The complaint in this matter is largely devoid of factual allegations.  It is alleged that, on May 18, 2009, Quelet was injured in a car accident that occurred at the intersection of Route 97 and Airport Drive in Westminster, Maryland.  He brings six claims, four for medical malpractice (Counts I, II, V, and VI), and two for respondeat superior liability (Counts III and IV).  Defendants in this case can be

2

divided into four groups. The first is composed of Hanover Family Practice and those it employed at all times relevant to the complaint: Smith, Preston, and Pfisterer. Count I alleges that they committed medical malpractice, and Count III asserts a claim of respondeat superior liability against Hanover Family Practice, on the theory that Smith, Preston, and Pfisterer committed negligent acts or omissions in the scope of their employment. The second group is composed of Hillside and its employee DeAngelo, both accused of medical malpractice in Count II, and Hillside with respondeat superior liability in Count IV, based upon DeAngelo's allegedly negligent conduct. Counts V and VI allege medical malpractice against Buckley and Hanover Rehabilitation, respectively.

Against each of the defendants accused of medical malpractice, Quelet repeats the same boilerplate allegations, which will be discussed in detail *infra*. The accusations differ only in the relevant time period: Hanover Family Practice, Smith, Preston, Pfisterer, Buckley, and Hanover Rehabilitation treated Quelet from May 2009 through March 2010; Hillside and DeAngelo treated him from November 2009 through February 2010.

Quelet first filed this action in the United States District Court for the District of Maryland, on June 25, 2012. The defendants moved to dismiss for lack of personal jurisdiction. On September 10, 2012, Quelet consented to transfer, and by

order dated September 24, 2012, Judge Catherine C. Blake transferred this matter to the Middle District of Pennsylvania.[1]

On October 16, 2012, Quelet filed a certificate of merit relative to his malpractice claim against Stephen Pfisterer.  (See Doc. 42).  Filing a certificate of merit is a necessary prerequisite to a medical malpractice action in Pennsylvania. Quelet also filed certificates of merit as to DeAngelo (Doc. 50), Hanover Rehabilitation (Doc. 51), Buckley (Doc. 52), Hillside (Doc. 53), Preston (Doc. 54), Smith (Doc. 55), and Hanover Family Practice (Doc. 57) on October 26, 2012. DeAngelo and Hillside moved to dismiss for failure to state a claim, arguing that Quelet's failure to file a certificate of merit in a timely fashion was fatal to his complaint.  Five days later, DeAngelo and Hillside moved to strike Quelet's certificates of merit as untimely.  Hanover Rehabilitation moved to strike its certificate on October 29, Pfisterer and Hanover Family Practice moved to dismiss on October 31, and Buckley moved to dismiss on November 12.

## II.    Jurisdiction and Standard of Review

The court has jurisdiction over the instant matter because the parties are completely diverse of citizenship and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1).

---

[1] The court notes that, with the exception of Hanover Rehabilitation's motion, the jurisdictional motions remain pending on the court's docket.  (See Docs. 21, 23, 26, 31).  Judge Blake's transfer order mooted these motions.  Accordingly, they will be denied as moot.

Federal Rule of Criminal Procedure 12(b)(6) provides for the dismissal of complaints that fail to assert a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court must conduct a two-part analysis to determine the sufficiency of the complaint. First, the court must separate the factual matters alleged from legal conclusions asserted. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The court must take all facts pled in the complaint as true, but may disregard any legal conclusions. Id. at 210-11. Second, the court must determine whether the factual matters alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 211 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). The analysis is "context-specific" and the court must "draw on its judicial experience and common sense" in making its determination whether the facts averred in the complaint suggest "more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

### III. Discussion

The instant motions, though numerous, in essence present three questions for the court's consideration. First, the court must determine whether Quelet's certificates of merit were timely filed under Pennsylvania Rule of Civil Procedure 1042.3, considering that this case was initiated in the District of Maryland, and if not, whether equity requires excusing Quelet's untimely filing. Second, assuming that the certificates were timely, the court must determine whether Quelet's licensed professional, Dr. Donlin M. Long, is qualified to opine on the propriety of defendants' conduct, as Rule 1042.3 requires. Third, if the certificates were timely

5

*and* Dr. Long is appropriately qualified, the court must determine whether Quelet's complaint fails to state a claim upon which relief can be granted. The court will address each issue *seriatim*.

### A. The Timeliness of Quelet's Certificates of Merit

In Pennsylvania, a plaintiff pursuing a professional malpractice suit must file a certificate of merit with the complaint, or within sixty days thereafter. PA. R. CIV. P. 1042.3(a). The certificate must include one of the following: a written attestation by "an appropriate licensed professional" that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited" by the defendant "fell below acceptable professional standards," and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the defendant is responsible; or a statement that expert testimony is unnecessary for the plaintiff's claim to proceed. PA. R. CIV. P. 1042.3(a)(1)-(3). Failure to file a certificate of merit is fatal to a plaintiff's claim. PA. R. CIV. P. 1042.7. A defendant seeking to dismiss for want of a certificate must first file written notice of their intent to do so, no sooner than thirty days after the complaint was filed. PA. R. CIV. P. 1042.6(a).

As a threshold matter, it is undisputed that Rule 1042.3 applies to this diversity action. In <u>Liggon-Redding v. Estate of Robert Sugarman</u>, 659 F.3d 258 (3d Cir. 2011), the Third Circuit determined that the certificate of merit requirement is a substantive rule of Pennsylvania law, applicable to federal court actions brought in diversity under <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938). <u>See</u> 659

F.3d at 264-65. It is settled law that Quelet must comply with Rule 1042.3 for his claim to proceed.

Determining whether Quelet timely complied with Rule 1042.3 is complicated by the fact that this action originated in Maryland. Quelet filed in the District of Maryland on June 25, 2012, and the case was not transferred to this court until September 24, 2012 – well after the 60 day window in which to file a certificate of merit. Prior to filing in federal court, however, Quelet sought relief with the Maryland Health Care Alternative Dispute Resolution Office ("ADR Office"), as required under Maryland law. See MD. CODE ANN., CTS. & JUD. PROC. § 3-2A-04. Maryland imposes a certification requirement similar to Pennsylvania, requiring that a plaintiff in a medical malpractice action file a certificate "of a qualified expert . . . attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury." Id. § 3-2A-05(b).[2] Quelet complied with the Maryland requirement, submitting Dr. Long's certificate of a qualified expert on April 11, 2012.[3] (Doc. 78-1). When this case was transferred, Quelet re-filed Dr. Long's ADR Office certificate as a Pennsylvania certificate of

---

[2] Maryland and Pennsylvania differ in that Pennsylvania requires a certificate of merit for a lack of consent claim, whereas Maryland does not. Compare PA. R. CIV. P. 1042.3(a) note with MD. CODE ANN., CTS. & JUD. PROC. § 3-2A-04(b). However, this difference is not relevant to the instant dispute.

[3] Maryland requires that the certificate of a qualified expert be filed within 90 days of the complaint. MD. CODE ANN., CTS. & JUD. PROC. § 3-2A-04(b)(1)(i)(1). The date on which Quelet filed with the ADR Office does not appear in the record, but no party has asserted that his certificate was untimely under Maryland law. Hence, the court will assume that Quelet timely filed with the ADR Office.

merit for each defendant. Quelet filed a certificate as to Pfisterer on October 16 (Doc. 42), and certificates as to the remaining defendants on October 26, (Docs. 50-55, 57), 22 and 32 days after transfer, respectively. Defendants assert that Quelet's claim must be dismissed with prejudice because he failed to file his certificates of merit within 60 days after filing the complaint.

Quelet makes three alternative arguments with respect to timeliness: first, that he satisfied Rule 1042.3 when he filed the certificate of a qualified expert before the ADR Office, because the Maryland certificate is functionally equivalent to the Pennsylvania certificate; second, that Pennsylvania's 60 day window in which to file was tolled while the case was before the Maryland court, and therefore because he filed the certificates within 60 days of the transfer, his filings were timely; and third, that, even if his filings were untimely, he falls into one of two equitable exceptions to the rule. The court agrees with Quelet that his filing in the Maryland ADR Office substantially complied with the requirements of Rule 1042.3, and it is therefore unnecessary to address his alternative arguments.

The purpose of requiring professional liability plaintiffs to file a certificate of merit is to "assure that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings." <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 160 (3d Cir. 2000) (interpreting New Jersey's analogous affidavit of merit requirement). Pennsylvania adopted its certificate requirement in order to cull from its dockets malpractice claims of questionable merit, conserving judicial resources and sparing defendants the burden of defending against spurious suits.

<u>Womer v. Hilliker</u>, 908 A.2d 269, 275 (Pa. 2006). By filing a certificate of merit, the plaintiff attests that he has the resources to support his allegations, and that proceeding with litigation will not be a wasteful exercise. <u>Id.</u>

Quelet's certificate of a qualified expert satisfies Pennsylvania's certificate of merit requirements. First, the Maryland certificate of a qualified expert is substantively equivalent to a Pennsylvania certificate of merit. Rule 1042.3 requires that a licensed professional attest that there is a "reasonable probability" that the defendant breached the appropriate standard of care, and that this breach was "a cause" of the plaintiff's injury. PA. R. CIV. P. 1042.3(a)(1). Dr. Long states in the Maryland certificate that he believes "to a reasonable degree of medical probability" that defendants breached the standard of care, resulting in Quelet's injuries. (Doc. 78-1 ¶¶ 1-2). Quelet's certificate diverges from Pennsylvania's requirements only insofar as he filed a single certificate with the ADR Office that listed each defendant, (<u>see</u> Doc. 78-1 ¶ 1), whereas Pennsylvania requires a separate certificate of merit for each professional defendant against whom the plaintiff seeks recovery. <u>See</u> PA. R. CIV. P. 1042.3(b)(1). However, this minor procedural defect does not undermine Quelet's substantial compliance with Rule 1042.3, because the certificate identified each defendant and certified that Quelet's allegations of liability were meritorious, substantially complying with the Rule. <u>See</u> <u>Ramos v. Quien</u>, 631 F. Supp. 2d 601, 613 (E.D. Pa. 2008). Nor are defendants prejudiced by accepting Quelet's certificate, because it was filed early in this litigation and properly served its screening function.

9

Defendants assert that the Pennsylvania Supreme Court's decision in Womer precludes Quelet's reliance on the ADR Office certificate, but this assertion misses the mark. The plaintiff in Womer did not file a certificate of merit, nor did he seek an extension of time in which to file; rather, he asserted that an expert report served during discovery constituted substantial compliance with the rule. The Pennsylvania Supreme Court held first that failure to comply strictly with the certificate of merit requirement could be disregarded when the plaintiff substantially complied with the rule, and there was no prejudice to the opposing party. 908 A.2d at 276. Ultimately, the court concluded that filing an expert report in lieu of a certificate of merit was not "*substantial* compliance, [but] . . . *no* compliance." Id. at 278 (emphasis in original).

Quelet's certificate differs from the expert report submitted in Womer. First, as discussed *supra*, Quelet's filing is not an expert report akin to those governed by Federal Rule of Civil Procedure 26. Rather, it is in substance a certificate that includes all of the elements regarding the probability of showing breach and causation that Rule 1042.3 requires. It differs only insofar as Quelet listed the defendants in one certificate rather than separately, and that it is captioned "certificate of qualified expert" rather than "certificate of merit." These asymmetries do not defeat substantial compliance. See Pomerantz v. Goldstein, 387 A.2d 1280, 1281-82 (Pa. 1978) (finding substantial compliance where pleading was timely filed and met substantive requirements, but had been improperly captioned). Second, when viewed in light of the policy goals that Rule 1042.3 pursues, it is clear

10

that Quelet's certificate is not substantively deficient.  The certificate of merit requirement is intended to screen frivolous malpractice suits by requiring a professional to attest to the merits of the plaintiff's claim.  Quelet's certificate of qualified expert does precisely that, squarely indicating that his claims were vetted by Dr. Long, who certified that a reasonable probability exists that his injuries were caused by the defendants' negligence.  The fact that the certificate was initially filed under Maryland law does not negate its essential congruence with Rule 1042.3. Accordingly, defendants' motions to dismiss for failure to timely comply with Rule 1042.3 will be denied.

### B.    Dr. Long's Qualifications

Defendants Pfisterer, Smith, Preston, Buckley, Hanover Rehabilitation Center, and Hanover Family Practice argue that Dr. Long is not an appropriate licensed professional to opine on the appropriate standards of care for a physical therapist, nurse practitioner, family practitioner, chiropractor, physical therapy and rehabilitation center, and family medical practice, respectively.  Dr. Long is a licensed physician and board certified neurosurgeon who has consulted and taught in the field of neurosurgery.  He holds an M.D. from the University of Missouri Medical School and a Ph.D. in neuroanatomy from the University of Minnesota Graduate School.  (Doc. 66, Ex. E).  Dr. Long is Distinguished Service Professor of Neurosurgery Emeritus at the Johns Hopkins University School of Medicine.  Id.

Dr. Long states in his report that he evaluated images and records of examinations of Quelet's lumbar and cervical spine that took place in 2009, 2010,

11

and 2011. (Doc. 78-1 at 4). These records included those of Hillside, Pfisterer, Buckley, and notes from Hanover Family Practice. (Id.) In particular, he asserts that while Quelet's neurological condition was worsening, defendants' examination notes do not reflect his degrading condition, nor do they reflect Quelet's complaints of increasing pain. (Id.) He opines that defendants "fail[ed] to . . . appreciate the developing neurological signs" that foreshadowed Quelet's worsening condition, delaying a proper diagnosis and appropriate therapy, and causing his ongoing maladies. (Id.)

Rule 1042.3 requires that the "appropriate licensed professional" retained to offer a statement of merit have "sufficient education, training, knowledge and experience to provide credible, competent testimony." PA. R. CIV. P. 1042.3(a)(1) note. Experts retained in a medical malpractice action against a physician "should" meet the qualifications set forth in the Pennsylvania Medical Care Availability and Reduction of Error Act ("MCARE Act"), 40 PA. CONS. STAT. § 1303.512. See PA. R. CIV. P. 1042.3(a)(1) note. The MCARE Act states that an expert testifying on a medical matter, including the standard of care and causation, must possess an unrestricted license to practice medicine in any state or the District of Columbia, and currently be engaged in, or have retired within five years from, active clinical practice or teaching. 40 PA. CONS. STAT. § 1303.512(b). There is no dispute that Dr. Long meets these qualifications. In addition, an expert testifying as to the standard of care must meet the following criteria:

(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care

(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, . . .

(3) In the event the defendant physician is certified by an approved board, be board certified by the same or similar approved board, . . .

Id. § 1303.512(c).  The court may waive the same-subspecialty requirement if the expert is trained in the diagnosis or treatment of the condition from which the plaintiff suffered, and this condition was outside of the defendant physician's specialty or competence, id. § 1303.512(d), or if the expert possesses training, expertise and knowledge sufficient to render the testimony as a result of "active involvement in or full-time teaching of" the subspecialty or a related field of medicine, within the previous five years.  Id. § 1303.512(e).[4]

The "same subspecialty ideal" contained in the MCARE Act is not absolute, and contains an express exception allowing courts to admit testimony from doctors in another speciality "that 'has a similar standard of care *for the specific care at*

---

[4] It is important to note that the court is not deciding that the MCARE Act will govern the admissibility of expert testimony at trial.  Application of those rules may conflict with Federal Rule of Evidence 702, and under Erie and its progeny, the federal rule trumps.  See Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 262 (3d Cir. 2011).  On the other hand, it may be the case that the MCARE Act does not conflict with Rule 702's standard for the admissibility of expert testimony, but instead sets forth rules of witness competency that apply in federal court diversity actions by virtue of Rule 601.  See Miville v. Abington Memorial Hosp., 377 F. Supp. 2d 488, 492-93 (E.D. Pa. 2005).  The parties have not briefed this issue and the court will not address it *sua sponte.*

*issue*.'" Smith v. Paoli Memorial Hosp., 885 A.3d 1012, 1020 (Pa. Super. 2005)

(quoting Herbert v. Parkview Hosp., 854 A.2d 1285, 1294 (Pa. Super. 2004))

(emphasis in original).  For example, in Smith, the Superior Court ruled that an

oncologist and a general surgeon were qualified to testify as to the standard of care

applicable to a gastroenterologist, because the specific care at issue in the case

related to identifying a tumor as the cause of gastrointestinal bleeding, areas within

the expertise of an oncologist and surgeon.  854 A.2d at 1014-15.  Similarly, in

Gartland v. Rosenthal, 850 A.2d 671, 675-76 (Pa. Super. 2004), the Superior Court

determined that a neurologist was qualified to testify as to the standard of care for a

radiologist, where the specific care at issue was the radiologist's failure to report the

possibility of a brain tumor and to recommend an MRI in order to ascertain

whether a tumor was the cause of the plaintiff's symptoms.

    In the instant matter, defendants argue that as a board-certified

neurosurgeon, Dr. Long is not qualified to opine as to the standard of care for a

nurse practitioner, physical therapists, family practitioner, or chiropractor.

However, they do not address Dr. Long's qualification to testify as to the standard

of care for the *particular care* at issue.  As Dr. Long explained, the particular care at

issue relates to defendants' failure to identify a degrading neurological condition as

a potential cause of Quelet's increasing pain – pain of which Quelet allegedly

apprised the defendants.  Defendants have not suggested that diagnosis of and care

for neurological conditions is outside Dr. Long's areas of expertise.  Rather, they

simply assert that because he does not share the same specialty as defendants, he is not qualified to certify the merits of Quelet's claim.

Smith, Preston, Buckley and Hanover Family Practice rely principally on four cases for their argument that Dr. Long is not a qualified professional. The first, Koppel v. Case, 2 Pa. D. & C. 5th 373, 384 (Pa. Com. Pls. 2007), is inapposite because the court deemed the plaintiff's expert unqualified to issue a certificate of merit not on the basis of her lack of familiarity with the standard of care for a particular specialty, but because she did not have a license to practice medicine in the United States. Indeed, the plaintiff's proffered expert had a seven year period in her CV where her only listed activity was "studying cases on trial or under investigation through the various programs of *Court TV*." Id. at 384. Dr. Long's qualifications far exceed those of the expert in Koppel. Defendants point next to Pitera v. United States, No. 1:09-CV-857, 2010 WL 2431629, at *1 (M.D. Pa. June 14, 2010), in which the plaintiff brought a medical malpractice claim against prison officials pursuant to the Federal Tort Claims Act, alleging that the prison staff improperly refused to provide him with a dietary supplement he claimed was necessary to treat arthritis. The court deemed the plaintiff's expert unfit to render a certificate of merit in a medical malpractice case because she was not a licensed physician or nutritionist, but was instead the CEO of the company that manufactured the dietary supplement which the plaintiff sought. Id. at *2. The expert's qualifications in Pitera are clearly very different from Dr. Long's qualifications.

15

Yacoub v. Lehigh Valley Medical, 805 A.2d 579 (Pa. Super. 2002), and Jones v. Eshbaugh, No. 2008-846, slip op. (Ct. Com. Pls. August 2, 2012) (docketed at Doc. 76-1), both differ from the instant matter in their procedural posture.  In Yacoub, the Pennsylvania Superior Court determined that there was an insufficient foundation to allow a neurosurgeon to testify *at trial* as to the standard of care for internists and nurses.  It made that decision, however, based upon a review of the neurosurgeon's CV and voir dire testimony.  805 A.2d at 592.  The court had the benefit of a full record on the physician's qualifications, whereas the instant dispute arises on a motion to dismiss.  Yacoub provides little guidance on how to evaluate a proffered expert's qualifications for purposes of a certificate of merit.  Similarly, the court in Jones held that an orthopedic surgeon was not qualified to testify as to the standard of care for a chiropractor, but did so on the basis of a motion in limine and having the benefit of a full expert report.  Slip op. at 2-3, 6.

Rule 1042.3 states that in a medical malpractice action against a physician, an expert supporting a certificate of merit should meet the qualifications of the MCARE Act, but the statute and case law offer little guidance as to how a court should determine whether that standard has been met without the benefit of discovery and expert reports that are available in later stages of litigation.  Dr. Long opines that the particular care at issue relates to the identification of a degrading neurological condition.  He is a neurosurgeon, and the court finds him appropriately qualified to render an opinion supporting the certificate of merit.  To the extent that defendants believe that Dr. Long's testimony would not be

16

admissible at trial under the MCARE Act, that issue must be developed factually

through discovery and is not appropriate for disposition on a motion to dismiss.

### C. The Factual Sufficiency of the Complaint

Pfisterer, Smith, Preston, and Hanover Family Practice have moved to

dismiss the complaint for failure to allege facts sufficient to state a claim.  They

argue that the complaint contains nothing more than bald assertions of ways in

which a healthcare provider could be negligent, but fails to plead any facts that

support the assertion that defendants actually were negligent.  The court agrees.

A complaint fails to state a claim for which relief can be granted if it tenders

no more than "naked assertion[s] devoid of further factual enhancement."  Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 557 (2007)).  Detailed factual allegations are not necessary, but the complaint

must consist of more than an "'unadorned, the-defendant-unlawfully-harmed-me

accusation.'"  Argueta v. United States Immig. and Customs Enforcement, 643 F.3d

60, 72 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 678).  "[W]here the well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to

relief.'"  Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Quelet's complaint fails to plead facts sufficient to state a claim.  First, the

complaint fails to identify what injuries Quelet actually suffered.  He alleges only

that his injuries caused "conscious pain and suffering in the past," continuing into

the future, and that he incurred expenses and lost wages and earning capacity as a

result. (Complaint, Doc. 1 at ¶ 13). He states that he suffered "permanent physical injuries and disfigurement," but provides no factual description whatsoever as to what physical injuries and disfigurement he suffered as a result of the defendants' alleged negligence.

Quelet's allegations of negligence are equally elusive. He recites the same single-paragraph allegation against each defendant, without identifying what particular acts or omissions by any particular defendant were supposedly negligent. Rather, the complaint lists a variety of ways in which a defendant theoretically could commit medical malpractice, without providing any factual support whatsoever with respect to Quelet's specific situation. The sum total of Quelet's allegations against each defendant amounts to the following:

> [Defendant] was negligent in that [he/she/it] failed to employ appropriate treatment, tests, and/or procedures, failed to carefully and thoroughly evaluate the Plaintiff's condition, failed to thoroughly evaluate the effects and results of any tests and/or procedures performed, failed to properly evaluate the effects of chosen treatment, failed to adjust the Plaintiff's treatment in response to appropriate evaluation of the effects of treatment, failed to properly monitor the course of the Plaintiff's condition and treatment and failed to properly note in the Plaintiff's chart the progress of his condition.

(Complaint, Doc. 1 at ¶¶ 18, 22, 26, 30, 35, 39, 56, 61). Nor does the certificate of merit greatly expand upon the allegations in the complaint. Dr. Long opines that defendants failed to appreciate Quelet's worsening condition, but he does not provide details specific to any individual defendant, nor does he identify what particular acts or omissions were negligent. (Doc. 78-1 at 4). Without more factual development regarding the manner in which defendants' care was deficient, Quelet

has vaguely "alleged" and he has not "show[n]" that he is entitled to relief.  See Iqbal, 556 U.S. at 679.  Accordingly, the court will grant defendants' motions to dismiss.

**IV.**   **Conclusion**

The court will grant defendants' motions to dismiss with respect to the factual sufficiency of Quelet's complaint, and deny them in all other respects. Because the court has found that Quelet's filing of a certificate of qualified expert in the Maryland ADR Office substantially complied with Pennsylvania's certificate of merit requirement, the motions to strike of Deborah DeAngelo, Hillside Pain Management, and Hanover Rehabilitation Center will be denied as moot.  Quelet has requested that if the court grants the motions to dismiss for failure to state a claim, he be granted leave to amend.  The court will grant this request.  An appropriate order will issue.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:        May 31, 2013

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY JOHN QUELET,** | : | **Civil Action No. 1:12-CV-1914** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **VERNON PRESTON, M.D.,** | : | |
| **LISA SMITH, STEPHEN** | : | |
| **PFISTERER, DEBORAH** | : | |
| **DeANGELO, BRENDAN BUCKLEY** | : | |
| **HILLSIDE PAIN MANAGEMENT,** | : | |
| **PC, HANOVER FAMILY PRACTICE** | : | |
| **ASSOCIATES, and HANOVER** | : | |
| **REHABILITATION CENTER,** | : | |
| **d/b/a YORK STREET REHAB, a/k/a** | : | |
| **HANOVER HOSPITAL** | : | |

## <u>ORDER</u>

AND NOW, this 31st day of May, 2013, upon consideration of the motions to dismiss of defendants Deborah DeAngelo and Hillside Pain Management, PC (Doc. 56), Hanover Rehabilitation Center (Doc. 45), Stephen Phisterer (Doc. 64), Lisa Smith, Vernon Preston, and Hanover Family Practice Associates (Doc. 67), and Brendan Buckley (Doc. 75), the motions to strike of Deborah DeAngelo and Hillside Pain Management (Doc. 62), and Hanover Rehabilitation Center (Doc. 59), the motions to dismiss for lack of personal jurisdiction (Docs. 21, 23, 26), and the motion for leave to file a supplemental response to defendants' jurisdictional motions (Doc. 31), and for the reasons discussed in the accompanying memorandum, it is hereby ORDERED that:

1.	The motions to dismiss for lack of personal jurisdiction (Docs. 21, 23, 26) and the motion for leave to file a supplemental response to defendants' jurisdictional motions (Doc. 31) are DENIED as moot.

2.	The motions to dismiss of Smith, Preston, and Hanover Family Practice Associates (Doc. 67), and Pfisterer (Doc. 64) are GRANTED with respect to the factual sufficiency of the complaint, and DENIED in all other respects.

3.	The motion to dismiss of DeAngelo and Hillside Pain Management (Doc. 56) is DENIED.

4.	The motion to dismiss of Hanover Rehabilitation Center (Doc. 45) is DENIED.

5.	The motions to strike of DeAngelo and Hillside Pain Management (Doc. 62), and Hanover Rehabilitation Center (Doc. 59), are DENIED as moot.

6.	The complaint is DISMISSED without prejudice.  Quelet is hereby GRANTED leave to file an amended complaint within **20 days of this order**.  See generally Shane v. Fauver, 213 F.3d 113 (3d Cir. 2000).


 S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge